# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID B. SPACHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. N14C-07-198 AML |
| v. | ) | |
| | ) | |
| WILLIAM C. CAHALL, ALICE B. | ) | |
| CAHALL, STAR BUILDERS, INC., | ) | TRIAL BY JURY OF |
| LAYAOU LANDSCAPING INC., and | ) | TWELVE DEMANDED |
| RISING SUN CONTRACTORS, INC., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STAR BUILDERS, INC., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff , | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL LEPORE CONTRACTORS, | ) | |
| INC., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

Submitted: July 25, 2016
Decided: October 27, 2016

**ORDER**

**Plaintiff's Motion to Enforce Settlement Agreement: GRANTED, in part**

1.  Four days before trial in this action was scheduled to begin, the parties reached an agreement intended to settle their disputes. The defendants' counsel

memorialized in an email the agreed-upon terms, after which the plaintiff's counsel advised the Court that the case had settled and the trial dates could be removed from the calendar. The defendants did not dispute that representation. A week later, the plaintiff sent a draft written agreement to the defendants, at which time the defendants attempted to introduce a new term permitting payment over three years, an issue the parties never discussed during their negotiations. The plaintiff now seeks an order enforcing the parties' agreement without that new term, arguing a binding agreement was reached as to all material terms. I agree and therefore grant the plaintiff's motion.

**FACTUAL BACKGROUND**

2. The plaintiff, David Spacht, filed this action alleging negligent construction, breach of contract, breach of warranties, and related claims in connection with the construction of his home. According to the allegations in the complaint, Defendant Star Builders, Inc. ("Star") and its subcontractors built Spacht's home. Spacht also named as defendants Star's two principals, William C. and Alice B. Cahall (collectively, the "Cahalls"). The case was scheduled to be tried on April 11, 2016.

3. The parties mediated the case with the assistance of David White, Esquire in August 2015. During mediation, the Cahalls discussed with Mr. White

their limited financial means to fund a large up-front settlement payment.[1] The last settlement offer Spacht made during the 2015 mediation was for a payment of $60,000, with half paid immediately and half paid over the next two years. The Cahalls rejected that offer and the mediation concluded. The parties continued, however, to discuss settlement over the next several months, both with Mr. White and among themselves.

4. On April 7, 2016, the parties reached an oral agreement regarding the amount to be paid in settlement, along with other terms.[2] That same day, Victoria Petrone, Esquire, who represented Star and the Cahalls, sent to C. Scott Reese, Esquire, who represented Spacht, an email (the "April 7 E-Mail"), memorializing the "general terms of the settlement agreement reached between Spacht and the Cahalls and Star Builders."[3] The terms Ms. Petrone identified were:

1. Spacht will be paid $15,000 in exchange [] for a full release of the Cahalls
2. A judgment will be entered against Star Builders in the amount of $130,000
3. Star Builders and/or the Cahalls will assign their rights against Selective related to this claim.[4]

---

[1] Letter to the Court from Victoria Petrone, Esquire, dated July 15, 2016 (hereinafter "Petrone Letter"), Ex. A, Aff. of David White, Esquire.
[2] Petrone Letter at 2.
[3] *Id*. at Ex. B.
[4] *Id*.

3

Further manifesting her client's intent that this represented a final agreement resolving the claims, Ms. Petrone concluded the email by stating: "Formal paperwork will follow."[5]

5.  Spacht's counsel then notified the Court that a settlement had been reached with Star and the Cahalls.[6] The trial was cancelled, and the Court did not rule on the Cahalls' pending motion for summary judgment. On April 15, 2016, Spacht's counsel, Mr. Reese, e-mailed a proposed settlement agreement to Ms. Petrone, asking: "Does this look ok[?]"[7] Ms. Petrone responded four days later that: "The Cahalls tell me they can pay $5,000/year for the next three years, payable in June."[8]

6.  When Mr. Reese indicated he would file a motion to enforce the settlement if the Cahalls refused to sign the draft agreement, Ms. Petrone responded that Mr. White, the mediator, "had relayed that your client may be agreeable to a payment plan and [the Cahalls'] agreement to the settlement figure was contingent on some arrangement."[9] Ms. Petrone's email further acknowledged, however, that "[t]here was no discussion about timing of payment

---

[5] *Id.*

[6] Spacht separately reached settlements with the other defendants. Those agreements are not an issue in this motion.

[7] Petrone Letter, Ex. C.

[8] *Id.* at Ex. D.

[9] *Id.* at Ex. E.

in our negotiations."[10]   Mr. Reese then filed the pending motion to enforce the settlement agreement (the "Motion").   The parties argued the Motion on July 7, 2016, and then submitted supplemental letter briefs at my request.

**ANALYSIS**

7.     The issue before the Court is whether the parties reached a binding settlement agreement on April 7, 2016, as memorialized by the April 7 E-Mail, or whether the timing of payment was a material term such that the parties' failure to agree on that issue renders the settlement unenforceable. Delaware courts encourage negotiated resolutions to contested cases, and, for that reason, among many others, settlement agreements are enforceable as contracts.[11]   As the party seeking to enforce the purported agreement, Spacht bears the burden of proving the existence of a contract by a preponderance of the evidence.[12]   In determining whether Spacht has met his burden, I must inquire:

> whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations . . . .[13]

---

[10] *Id.*

[11] *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. Jun. 29, 2010); *Asten, Inc. v. Wangner Sys. Corp.*, 1999 WL 803965, at *1 (Del. Ch. Sept. 23, 1999).

[12] *Schwartz*, 2010 WL 2601608, at *4.

[13] *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1285 (Del. Ch. 2004) (quoting *Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1097 (Del. Ch. 1986)).

It is the parties' overt manifestations of assent, rather than their subjective intent, that controls the question of whether an agreement was reached on all material terms.[14]

8.  Spacht contends the Motion should be granted and the parties' agreement enforced because the parties reached an agreement on April 7, 2016 regarding all material terms of the settlement. The issue regarding the timing of payment, Spacht argues, and the suggestion that payment would be made over the course of three years, never was communicated by the Cahalls when the settlement offer was made and accepted. Spacht contends the timing of payment was not material and an agreement on that term therefore was not necessary for a binding agreement to be formed.

9.  The Cahalls, on the other hand, contend no enforceable agreement was reached because (1) they did not manifest their intent to be bound to Spacht's settlement offer, and (2) even if an agreement was reached as to some terms of settlement, there is no enforceable contract because there was no meeting of the minds on the material term of timing of payment. The Cahalls assert funding a $15,000 payment within 30 days is impossible in view of their limited financial means. Although I am sympathetic to their position, the Cahalls' arguments do not overcome the clear evidence that the parties reached a binding agreement.

---

[14] *United Health All., LLC v. United Med., LLC*, 2013 WL 6383026, at *6 (Del. Ch. Nov. 27, 2013).

10. As to the question of whether they manifested an intent to be bound by Spacht's offer, the Cahalls assert that Spacht offered settlement at $60,000, with half to be paid upfront and the balance over two years, that the Cahalls counteroffered settlement at $15,000, that Spacht then requested payment within 30 days, and that the Cahalls counteroffered with payment over three years. Put differently, the Cahalls argue they did not manifest assent to be bound to Spacht's offer, but rather counteroffered for payment to be made over a period of three years. The factual record does not match the Cahalls' argument. In order for a contract to be formed, the parties must have manifested their assent and must have reached a complete meeting of the minds on all material terms.[15] The Cahalls rejected the offer made at the August 2015 mediation for a $60,000 settlement payment to be paid within two years. That offer therefore no longer was "live." After continuing negotiations between counsel, the parties agreed the Cahalls would make a settlement payment of $15,000, judgment in the amount of $130,000 would be entered against Star, and Star and the Cahalls would assign to Spacht their rights against a third party. The April 7 E-Mail demonstrates, by a preponderance of the evidence, that there was a meeting of the minds between the parties regarding the terms of their agreement. That is, Ms. Petrone's email manifested her clients' assent to be bound to the parties' agreement and

---

[15] *PharmAthene, Inc. v. SIGA Techs., Inc.*, 2011 WL 4390726, at *13 (Del. Ch. Sept. 22, 2011); *Ramone v. Lang*, 2006 WL 905347, at *10 (Del. Ch. Apr. 3, 2006).

7

memorialized the key terms of that agreement. The Cahalls further manifested that assent by remaining silent when Spacht represented to the Court that a settlement agreement had been reached.

11. The Cahalls also contend, however, that even if they manifested an intent to be bound, the parties did not agree to all terms material to the settlement. The fact that the parties did not reach an agreement on *every* term is not dispositive of the question of whether a binding contract was formed; the parties need only have reached an agreement as to terms that were "*essential*." A settlement agreement that leaves other matters to future negotiation is enforceable if those other matters are not "essential" terms.[16] When terms are left to future negotiation, the enforceability of an agreement depends on "the relative importance and severability of the matter left to the future."[17] That is, this Court must determine whether the timing of the payment to which the Cahalls agreed was "so essential to the bargain that to enforce the promise would render enforcement of the rest of the agreement unfair."[18]

---

[16] *Loppert*, 865 A.2d at 1289.

[17] *Asten, Inc.*, 1999 WL 803965, at *2 (internal quotations and citations omitted).

[18] *Id*. The fact that Spacht later sent a proposed formal settlement agreement for review and signature does not support a conclusion that no binding agreement had been reached. Where an agreement has been reached on all essential terms, the mere fact that it was understood that a formal contract later would be drawn up and signed does not render the settlement incomplete or unenforceable, absent a positive agreement that the contract would not be binding until it was memorialized and executed. *Universal Prods. Co. v. Emerson*, 179 A.2d 387, 394 (Del. 1935). There is no evidence here that the parties agreed their settlement only would become binding when a formal contract was executed.

12. The relative importance of a term is by its nature a fact-intensive inquiry. The absence of an agreement on a particular term has been found to be immaterial where other terms in the parties' agreement allow the Court to enforce the parties' bargain.[19] Where, however, the unresolved terms are material and the parties' intent cannot be gleaned from other aspects of the agreement, no enforceable contract exists.[20]

13. The Cahalls assert that no complete agreement was reached as to all material terms, and that the April 7 E-Mail only reflected an agreement as to the amount of the settlement payment. Although there are cases in which a court has concluded that the parties only had agreed to some, but not all, material terms, and that the agreement a movant sought to enforce therefore was not complete and binding,[21] this is not such a case. The Cahalls argue, in an indirect fashion, that the timing of payment was a material term because they "told the mediator that they did not have cash readily available to pay toward a settlement," and because the last offer made during the August 2015 mediation proposed extending the payment over a two-year period. Whatever the Cahalls' subjective intent, however, a reasonable person would conclude, based on the course and substance of the

---

[19] *See, e.g. Asten, Inc.*, 1999 WL 803965, at *2-3 (concluding unresolved administrative issue as to how to effect division of proceeds paid in kind rather than in cash did not constitute omission of material term); *Hendry v. Hendry*, 1998 WL 294009, at *2 (Del. Ch. June 3, 1998) (holding exact property line description was not an essential term because other terms of the contract allowed the Court to enforce the parties' agreement).

[20] *Schwartz*, 2010 WL 2601608, at *10-11.

[21] *Leeds*, 521 A.2d 1095.

parties' negotiations, that the negotiations had concluded and an agreement had been reached.

14.   For example, there is no evidence, and the Cahalls do not argue, that they advised Spacht that timing of payment was essential or that they would not be bound by the settlement agreement until the parties resolved the timing issue. Although the Cahalls assert they told the mediator that timing was important, they do not assert, and cannot show, that timing ever was discussed with Spacht after the Cahalls rejected Spacht's two-year offer in August 2015.  Ms. Petrone conceded to Spacht's counsel that "there was no discussion about timing of payment" during negotiations.  Although the Cahalls assert that "their agreement to a settlement figure was contingent on some arrangement" to extend payment over a period of years, they offer no evidence that they communicated that contingency to Spacht.[22]  The absence of discussion, particularly in the critical period leading up to the parties' April 7th agreement, strongly indicates the term was not essential. Other facts support that conclusion, particularly Ms. Petrone's reference on April 7th to the "settlement agreement reached between [the parties]," even though no agreement as to timing had been reached at that time.

15.   That is not to say, however, that the 30-day payment term proposed by Spacht's counsel is part of the parties' agreement to be enforced by this Court.

---

[22] Petrone Letter, Ex. E.

The parties left to future negotiations the resolution of non-material terms, including the timing of payment. "The Court will not enforce terms of a written agreement which, although they may be 'reasonable,' were not discussed by the parties."[23] The Motion to Enforce the Settlement Agreement therefore is **GRANTED** to the extent it seeks an order enforcing the terms memorialized in the April 7 E-Mail.

     **IT IS SO ORDERED.**

                     */s/ Abigail M. LeGrow*
                     Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    C. Scott Reese, Esquire
        Victoria Petrone, Esquire

---

[23] *See Corbesco, Inc. v. Local No. 542*, 620 F. Supp. 1239, 1244 (D. Del. 1985).